# In the United States Court of Federal Claims

|  |  |
|---|---|
| ERIK J. LARKIN, | |
| *Plaintiff,* | |
| v. | No. 25-219 |
| | (Filed: June 4, 2025) |
| THE UNITED STATES, | |
| *Defendant.* | |

*Ann M. Welhaf*, Alexandria, VA, for Plaintiff.

*Catherine M. Yang*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**LERNER,** *Judge.*

## I.    Introduction

Plaintiff Erik J. Larkin alleges his discharge from the United States Marine Corps was unlawful. Am. Compl. at 1, ECF No. 16. He seeks back pay, a void of his discharge, a correction of his records, and other relief. *Id.* at 41. Before the Court are Plaintiff's Motion for an Emergency Preliminary Injunction and Defendant's Motion for a Voluntary Remand to the Board for Correction of Naval Records ("BCNR"). Pl.'s Mot. for Prelim. Inj., ECF No. 10; Def.'s Second Mot. for Remand (hereinafter "Mot. for Remand"), ECF No. 17. The Court **DENIES** Plaintiff's requested preliminary injunction for lack of jurisdiction, and it also **DENIES** Defendant's request for a remand.

## II.    Factual Background

At this stage, the Court relies on Plaintiff's well-pled allegations without making findings of fact. *See Rahman v. United States,* 149 Fed. Cl. 685, 687 (2020). Mr. Larkin enlisted in the Marine Corps after high school in September 2020. Am. Compl. at 3. His five-year contract was scheduled to expire on September 7, 2025. *Id.* He served as an Air Traffic Control radar technician at Marine Corps Air Station Yuma in Yuma, Arizona ("MCAS Yuma"), where he worked the overnight shift for most of his tenure. *Id.* at 4. Plaintiff received several accolades, including service medals and a nameplate erected in his honor. *Id.*

Plaintiff was promoted to Lance Corporal on or about September 1, 2021 and to Corporal the following year. *Id.* at 5. On October 25, 2024, he received an evaluation test score high enough to earn a promotion to Sergeant, set to take effect November 2024. *Id.*

Beginning in March 2024, Plaintiff began to experience a "hostile work atmosphere" after leadership changed at MCAS Yuma. *Id.* at 6. The Marine Corps Criminal Investigation Division ("CID") opened an investigation into illegal drug use at MCAS Yuma that eventually focused on him and two other Marines. *Id.* at 9, 15. The Amended Complaint includes the resulting investigation report. Am. Compl. Ex. A (hereinafter "Ex. A") at 81–123, ECF No. 16-1.

Mr. Larkin concedes he purchased and used vape pens—specifically, a fruit-flavored vape product called "Pack-A-Punch"—sold by the smoke shop "Bummy Legion." Am. Compl. at 7–9. Bummy Legion advertises the relaxing effects of valerian root, supposedly one of the ingredients in Pack-A-Punch. Ex. A at 5, 8, 11. Plaintiff alleges Pack-A-Punch is a lawful product that he used for "sleep and relaxation" after he developed insomnia working night shifts as a radar technician. Am. Compl. at 7, 9.

On August 19, 2024, in a recorded session lasting for about eight hours, two CID agents questioned another Marine at MCAS Yuma who used Pack-A-Punch. *Id.* at 10. One of the agents told this Marine he "knew" Pack-A-Punch was "a prohibited designer drug" similar to marijuana. *Id.*; Ex. A at 85. The agent allegedly pressured the Marine to "save himself" by implicating others, and the Marine named Mr. Larkin. Am. Compl. at 10–11. The agents obtained permission from the Marine to search his phone, discovering text exchanges with Plaintiff from a year earlier about Pack-A-Punch. *Id.* at 11; Ex. A at 91–95, 97–112. However, Plaintiff maintains the texts never refer to prohibited substances. Am. Compl. at 12.

On August 26, 2024, CID agents questioned Mr. Larkin for several hours in a recorded session. *Id.* at 13. An agent read Mr. Larkin his *Miranda* rights, and Mr. Larkin declined to answer questions. *Id.* The agent also confiscated Plaintiff's phone, telling him that he would be "in direct violation of a lawful order" if he did not turn it over. *Id.* at 14. Defendant kept Plaintiff's phone for several months but did not include any evidence from it in the investigation report. *Id.* at 15; Ex. A at 81–123.

CID forwarded the report to a Judge Advocate General ("JAG"), who concluded the evidence was insufficient to bring before a court martial or non-judicial punishment board. Am. Compl. at 16. Nonetheless, the JAG recommended involuntary administrative separation. *Id.* Defendant told Plaintiff that under the Marine Corps Separation and Retirement Manual, he was not entitled to a hearing before a separation board because he was a probationary servicemember who had served fewer than six years. *Id. See also* MCO 1900.16 Ch. 2 ¶ 6210(6)(c). Instead, Mr. Larkin received the "notice procedures" for probationary servicemembers, which provide a right to written notice of the proposed discharge, consultation with counsel, and at least two days to return a written response. *See* Am. Compl. at 16; MCO 1900.16 Ch. 2 ¶ 6303. Plaintiff alleges the Commanding Officer acting as the "separation authority" was required to determine whether the underlying reason for his discharge was supported "by a preponderance of the evidence." Am. Compl. at 28 (citing MCO 1900.16 Ch. 2 ¶ 6309(1)(a)).

Plaintiff received written notice, retained counsel, and returned a written rebuttal. Am. Compl. at 19–20, 33. Mr. Larkin was told not to "waste his time" with a rebuttal because the "[Commanding Officer] had made up his mind." *Id.* at 21. He recalls the JAG told him that his Commanding Officer did not have access to Mr. Larkin's positive past performance records when making the decision. *Id.*

Plaintiff claims he repeatedly asked to be heard before a separation review board but was denied. *Id.* at 16. Defendant also denied Plaintiff's request for disciplinary procedures through either a court-martial or non-judicial punishment under Article 15 of the Uniform Code of Military Justice ("UCMJ"). *Id.* at 17.

On December 23, 2024, Plaintiff was discharged from active duty. *Id*. at 18; Ex. A at 125. The narrative reason for discharge was the commission of a "Serious Offense" under MCO 1900.16 Ch. 2 ¶ 6210(6)(c). Ex. A at 125. Specifically, Defendant concluded that Mr. Larkin solicited and used MDMB-4en-PINACA, a synthetic cannabinoid and "a controlled substance analogue," in violation of Secretary of the Navy Instruction 5300.28F. *Id.* at 130. The discharge was characterized as "General (Under Honorable Conditions)" with a reentry code of "RE-04"— not recommended for reenlistment. Ex. A at 125–26.

## III.  Procedural Posture

Mr. Larkin filed his initial Complaint on February 5, 2025, claiming (1) his discharge violated Marine Corps regulations and his constitutional due process rights by denying him a hearing and (2) the seizure of his phone constituted a taking under the Fifth Amendment. Compl. at 32–42, ECF No. 1. Defendant moved to remand the matter to the Department of the Navy so the BCNR could consider Plaintiff's claims "in the first instance." Def.'s First Mot. for Remand at 1, ECF No. 8.

Plaintiff opposes remand, arguing the BCNR cannot address the challenge to the constitutionality of his discharge process because the Marine Corps cannot declare its own regulations unconstitutional. Pl.'s Resp. to Def.'s Mot. for Remand (hereinafter "Pl.'s Resp.") at 4, ECF No. 9. Mr. Larkin also believes he will be prejudiced by the delay caused by remand and characterizes the Government's request to reconsider his claims as "disingenuous." *Id.* at 8, 11– 13. He insists that he "deserves his day in Court." *Id.* at 13.

The Government contends Mr. Larkin's constitutional claim should not preclude a remand to first resolve the procedural claim. Def.'s Reply Supp. Remand (hereinafter "Def.'s Reply") at 2–3, ECF No. 11. It also maintains Plaintiff will be no more prejudiced by the delay from remand proceedings than he would by litigation in this Court. *Id.* at 4–5.

On April 7, 2025, Mr. Larkin filed a Motion for Emergency Preliminary Injunction requesting that the Court enjoin Defendant from releasing "derogatory information" related to his discharge. Pl.'s Mot. for Prelim. Inj. at 2. The Government argues this Court lacks jurisdiction to award such prejudgment injunctive relief, or in the alternative, Plaintiff has not established the requirements for a preliminary injunction. Def.'s Resp. to Prelim. Inj. (hereinafter "Def.'s

Resp.") at 2–5, ECF No. 12.  Plaintiff replies that his requested relief is within the Court's statutory jurisdiction, although he "acknowledges that the bifurcated system of remedies within the federal courts pertaining to military pay cases complicates the question of the Court's authority to grant [his] motion."  Pl.'s Reply Supp. Prelim. Inj. (hereinafter "Pl.'s Reply") at 1–4, ECF No. 14.

On April 19, 2025, Mr. Larkin filed an Amended Complaint.  Am. Compl.  The Amended Complaint removes the taking claim and requests back pay for lost salary, housing allowance, and military benefits under 37 U.S.C. §§ 204 and 403; an order to void the unlawful discharge; and a correction of his military records.  *Id.* at 41.  The Government filed a Second Motion for Remand that is "substantially similar" to the first, though it additionally asserts that the BCNR can consider "due process challenges."  Mot. for Remand at 1 n.1, 4.  By Plaintiff's request, the Court construes his original opposition to remand as responsive to Defendant's new Motion.  *See* Tr. of Status Conference Proceedings (hereinafter "Tr.") at 35, ECF No. 22.  Both the Motion for Remand and Motion for Emergency Preliminary Injunction are fully briefed and ripe for review.

## IV.    Jurisdiction

Plaintiff seeks backpay under 37 U.S.C. §§ 204 and 403 and other equitable relief.  Am. Compl. at 34–41.  The Court has jurisdiction over claims for pay under § 204 and the Basic Allowance for Housing under § 403.  *Martinez v. United States,* 333 F.3d 1295, 1303 (Fed. Cir. 2003); *Sharpe v. United States,* 935 F.3d 1352, 1360 (Fed. Cir. 2019).  The Court may also grant Plaintiff's claims for nonmonetary relief insofar as they are authorized by the Tucker Act.  "To provide an entire remedy and to complete the relief afforded by the [monetary] judgement, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records."  28 U.S.C. § 1491(a)(2).  For example, the Court may cancel a plaintiff's unlawful discharge, reinstate him to active-duty service, and correct his records to reflect constructive service during the time he was discharged.  *See Tippett v. United States,* 28 Fed. App'x 942, 945 (Fed. Cir. 2001).

## V.    Discussion

### A.    The Court Lacks Jurisdiction to Grant Plaintiff's Motion for a Preliminary Injunction.

The Court cannot award Mr. Larkin's request for an "emergency preliminary injunction" enjoining Defendant from releasing "derogatory information" about him.  *See* Pl.'s Mot. for Prelim. Inj. at 1–2.  Generally, the U.S. Court of Federal Claims may not provide equitable relief.  *United States v. King*, 395 U.S. 1, 2–3 (1969); *Richardson v. Morris*, 409 U.S. 464, 465 (1973).  Rather, the Court may only entertain claims for injunctive relief in "statutorily defined circumstances."  *Tetzlaff v. United States,* No. 15-161, 2015 WL 7585333, at * 11 (Fed. Cir. Nov. 25, 2015).  The Tucker Act authorizes the Court to "complete the relief" afforded by a

monetary judgment with "orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records" when such orders are "incident of and collateral to" the monetary judgment. 28 U.S.C. § 1491(a)(2).

Plaintiff submits the bifurcation of equitable jurisdiction between this Court and the district courts means he "may not be able to get a complete remedy in any one forum." Pl.'s Reply at 1. But he nonetheless asserts the Tucker Act allows the Court to issue injunctions that are "incident of and collateral to" the judgment. *Id*. at 2. While the Court may not enjoin his separation, Plaintiff argues it may enjoin the Government from releasing "disparaging" information about him because such relief is "ancillary" to the ultimate judgment on the merits. *Id*. at 3.

But the words "incident of and collateral to [judgment]" do not create a general category of equitable relief that the Court may provide. Rather, they describe the circumstances under which the Court may grant an explicit and limited list of remedies: namely, "orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2). "Preliminary injunctions are not included in that list." *Sergent's Mech. Sys., Inc. v. United States,* 157 Fed. Cl. 41, 50 (2021) (citing *Tetzlaff*, 2015 WL 7585333, at *11; *Cooper v. United States*, 860 F. App'x 742, 744 (Fed. Cir. 2021)). Neither are injunctions preventing the release of derogatory information.

Even if the Court construed the requested injunction as the type of equitable relief permitted by the Act, it may not grant such relief before final judgment. The Court cannot order injunctive relief before a monetary judgment because the relief would not "complete" or be "collateral to" the final judgment. *Sergent's Mech. Sys., Inc.*, 157 Fed. Cl. at 50–51 (citing *James v. Caldera*, 159 F3d 573, 580 (Fed. Cir. 1998)). Therefore, the Court cannot grant Plaintiff's requested injunction, "both because such relief is not in the short list of allowable equitable relief, and because a preliminary injunction, by definition, cannot be 'incident of and collateral to' a final money judgment." *Id.* at 48 (citing 28 U.S.C. § 1492(a)(2)).

## B.    The Court Declines to Remand Plaintiff's Claims to the Board for Correction of Naval Records.

The Tucker Act authorizes the Court "to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2). Likewise, the Court's rules provide, "[i]n any case within its jurisdiction, the court, on motion or on its own, may order the remand of appropriate matters to an administrative or executive body or official." Rules of the Court of Federal Claims (hereinafter "RCFC") 52.2(a).

When the Government requests a remand to reconsider its previous position without confessing error, "the reviewing court has discretion over whether to remand." *SKF USA Inc. v. United States,* 254 F.3d 1022, 1029 (Fed. Cir. 2001). Here, the Government confesses no error and requests a remand to allow the BCNR to consider Plaintiff's challenge to his discharge "in

5

the first instance." Mot. for Remand at 1–2. Defendant acknowledges "the decision to remand is within the Court's sound discretion." *Id.* at 2.

In military pay cases, the Tucker Act gives the Court "flexibility to require exhaustion of correction board remedies in cases in which the benefits of exhaustion are applicable, but to proceed directly to adjudication if the court concludes that resort to the correction board would not serve a useful purpose." *Martinez,* 333 F.3d at 1310. If the Government's concern is "substantial and legitimate, a remand is usually appropriate." *SKF USA Inc.,* 254 F.3d at 1029.

The Court of Federal Claims has previously applied a three-part test to determine whether a request for remand is "substantial and legitimate." *See, e.g., Keltner v. United States,* 148 Fed. Cl. 552, 564 (2020); *Lancaster v. United States,* No. 22-267, 2022 WL 3100430, at *2 (Fed. Cl. Aug. 4, 2022); *Trace Sys. Inc. v. United States,* No. 22-404, 2022 WL 2963486, at *3 (Fed. Cl. July 26, 2022). The Government's concerns are substantial and legitimate where (1) it provides a "compelling justification for its remand request," (2) "the need for finality does not outweigh the [Government's] justification for voluntary remand," and (3) "the scope of [its] remand request is appropriate." *Keltner,* 148 Fed. Cl. at 564 (quoting *Ad Hoc Shrimp Trade Action Comm. v. United States*, 882 F. Supp. 2d 1377, 1381 (Ct. Int'l Trade 2013)). In weighing each prong, the Court may consider other factors, including "the timing of the government's motion, its representations regarding the reasons for a remand, the plaintiff's factual allegations viewed through the prism of the particular legal issues involved, and the overall fitness and completeness of the administrative record." *Id.* at 563

The Court has applied this test to deny a request for remand. For example, in *Keltner* the Government requested a voluntary remand to the Air Force Board for Correction of Military Records so that it could "expound upon its rationale for denying plaintiff's request." 148 Fed. Cl. at 564 (quotation omitted). Because the Air Force did not "profess any intention to reconsider" its decision—intending instead to merely "bolster" it—the Court found its reasons for remand were not substantial and legitimate. *Id.* at 565–66. The *Keltner* Court noted that "'courts almost always issue voluntary remands to government agencies,' creating a virtual 'presumption' that such motions are proper." *Id.* at 556–57 (quoting Joshua Revesz, *Voluntary Remands: A Critical Reassessment,* 70 Admin. L. Rev. 361, 364 (2018)). Nevertheless, it "decline[d] to adhere to any such presumption." *Id.* at 577.

"The central holding of *Keltner* . . . is that government motions for a voluntary remand to an agency for additional consideration should not simply be granted in a perfunctory manner." *Rahman*, 149 Fed. Cl. at 690. Instead, "such motions should be treated as with any other motion affecting the substantial rights of the plaintiff, by subjecting the government's position to careful analysis." *Id.* In *Keltner,* the Court did not rule on a motion for remand to an agency for *initial* consideration. But regardless of their posture, motions for remand must be subject to careful analysis, and this Court declines to apply a presumption that they are proper. Instead, the Court determines the Government's justifications for remand are not "substantial and legitimate," and a remand would serve no "useful purpose." *See SKF USA Inc.*, 254 F.3d at 1029; *Martinez,* 333 F.3d at 1310.

1.    **Defendant Has Not Provided a Compelling Justification for Remand.**

The Government offers multiple justifications for a remand to the BCNR. First and foremost, a "remand would enable the BCNR, the highest level of administrative review within the Department of the Navy, to consider Mr. Larkin's challenge to his discharge for the first time." Mot. for Remand at 2–3. The Government also argues the BCNR is the superior forum for Plaintiff's claims because the Board can grant broad relief, "including on equitable grounds that this Court may not consider." *Id.* at 5. Finally, the Government invokes expediency and efficiency, arguing "a remand now may well 'lead to a more efficient means of resolving plaintiff's claim promptly.'" *Id.* at 6 (quoting *Culpepper v. United States,* No. 22-410, 2023 WL 124864, at *4 (Fed. Cl. Jan. 6, 2023)). And even if the Board granted partial relief, "remand would still narrow the issues that remain for this Court to resolve." *Id.* at 5. The Court does not find these reasons compelling.

a.    **Plaintiff's Decision to Initially Bring his Claims to the Court of Federal Claims Is Not a Compelling Reason to Remand.**

It may often be appropriate to grant a request to remand for initial review by a military correction board but there should be no presumption that remand is proper. "[S]ince their creation, the correction boards have been regarded as a permissive administrative remedy," and "an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging [a] discharge." *Martinez*, 333 F.3d at 1304 (first citing *Richey v. United States,* 322 F.3d 1317, 1325 (Fed. Cir. 2003); and then citing *Heisig v. United States*, 719 F.2d 1153, 1155 (Fed. Cir. 1983)). It is well established—and Defendant concedes—that "there is generally no requirement that a plaintiff exhaust administrative remedies with the applicable correction board before filing suit in this Court." Mot. for Remand at 3. *See also Antonellis v. United States*, 723 F.3d 1328, 1333 (Fed. Cir. 2013) (citing *Heisig,* 719 F.2d at 1155).

Still, "typically, if suit is filed just in the [Court of Federal Claims], that court will require resort to a Corrections Board while the matter remains pending in that court." *Antonellis,* 723 F.3d at 1333 (quoting *Richey,* 322 F.3d at 1323) (alteration in original). As Defendant points out, "this Court has repeatedly found substantial and legitimate reasons to remand so that the board may conduct . . . review in the first instance and reconsider the challenged action." Mot. for Remand at 3 (first citing *Lohmann v. United States,* 154 Fed. Cl. 355, 359–60 (2021); then citing *Wolfing v. United States,* 144 Fed. Cl. 516, 518 (2019); then citing *Culpepper,* 2023 WL 124864, at *3; and then citing *Lancaster*, 2022 WL 3100430, at *1).

But this pattern does not mean the Court should always remand to a correction board for review in the first instance. Otherwise, the Court imposes a de facto requirement that plaintiffs exhaust their administrative remedies before a correction board, which the Court may not do— either explicitly or implicitly. *See Clyde v. United States,* 80 U.S. 38, 39 (1871); *Soriano v. United States,* 352 U.S. 270, 276 (1957). In *Clyde,* the U.S. Supreme Court struck down a court rule created by the then-nascent Court of Claims requiring parties to present their claims to an executive department before suing in the Court. 80 U.S. at 39. The rule improperly "required the claimant to do what the acts giving the court jurisdiction did not require him to do before it

would assume jurisdiction of his case." *Id.* And in *Soriano,* the Supreme Court held the Tucker Act does not impose an administrative exhaustion requirement, admonishing that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." 352 U.S. at 276. "[T]he Tucker Act strictly define[s] the class of cases in which Congress consented to suit against the sovereign," and "courts [are] not empowered to engraft additional limitations on the Court of Claims' exercise of its jurisdiction." *Martinez,* 333 F.3d at 1306 (citing *Soriano,* 352 U.S. at 276). Just as the Court cannot skirt its jurisdiction with a court rule, it may not engraft additional limitations on its jurisdiction by reflexively remanding claims to a correction board in the first instance.

A reflexive remand to the BCNR distorts the purpose of both the Tucker Act and the Legislative Reorganization Act of 1946, which created the military correction boards. Previously, servicemembers could bring monetary claims to the Court under the Tucker Act or to Congress through private bills. *Martinez,* 333 F.3d at 1307. Congress created the correction boards to relieve itself of the burden to hear private bills. *Id.* at 1306–07 (first citing the Legislative Reorganization Act of 1946, Pub. L. No. 79-601, §§ 131, 207, 60 Stat. 812, 831, 837; then citing S. Rep. No. 82-893 (1951); and then citing 40 Op. Att'y Gen. 504, 505 (1947)). But the boards' purpose is not to relieve any burden upon the Court. "When Congress authorized the creation of correction boards . . . , it did not suggest that service members would be barred from obtaining relief under the Tucker Act until and unless they had sought relief from the pertinent correction board." *Id.* at 1307.

Furthermore, an expectation that this Court will presumptively redirect plaintiffs to correction boards could incentivize the military to forgo evidentiary hearings *before* discharge, knowing there will be a second chance to offer a hearing. While the U.S. Armed Forces are not always required to conduct evidentiary hearings before a discharge, constitutional due process may require hearings in certain cases. *See Anderson v. United States*, 111 Fed. Cl. 572, 588 (2013). For example, stigma occasioned by a discharge triggers "due process rights to notice and a hearing." *Id.* at 589; *Holley v. United States*, 124 F.3d 1462, 1470 (Fed. Cir. 1997) (confirming that "when an action is stigmatizing there is an enhanced right to a hearing"). Indeed, in this case Plaintiff alleges his drug-related discharge is "stigmatizing," but the Marine Corps denied several requests for a pre-separation hearing. Am. Compl. at 16–17, 36–37. Only now before the Court does Defendant request to send the case to the BCNR, invoking case law that a "proceeding before the BCNR provides due process." Mot. to Remand at 4 (citing *Volk v. United States*, 111 Fed. Cl. 313, 331–32 (2013)).

To be sure, the Government's professed intent for the BCNR to freshly consider Mr. Larkin's discharge is a more legitimate reason to remand than the desire to "expound upon" a previous decision. *See Keltner*, 148 Fed. Cl. at 567–68. But this alone is not a basis for the Court to remand Plaintiff's claims to the BCNR. Instead, a compelling justification would convince the Court that a remand to the Board serves a "useful purpose." *See Martinez*, 333 F.3d at 1310. Here, it is not apparent what useful purpose a remand to the BCNR would serve, or how it would benefit the fair and efficient resolution of Plaintiff's claims.

8

**b. The Court Is Competent to Assess the Factual Conclusions and Procedures Relied Upon in Plaintiff's Discharge.**

Plaintiff alleges his discharge violated applicable military regulations and his constitutional due process rights. Am. Compl. at 34–40. Defendant points out the BCNR can consider both kinds of challenges and has "unique familiarity" with the required procedures for separation. Mot. for Remand at 4–5. The Government also argues that, should Plaintiff appeal an unfavorable decision by the BCNR, "the Court would have the benefit of an explanation from the Department of the Navy's highest administrative review body as to why Mr. Larkin was not entitled to particular relief." *Id.* at 5 (citing *SKF USA, Inc.*, 254 F.3d at 1029).

The military's familiarity with its own discharge procedures may at times support a remand. But procedural expertise bears little weight here when viewing Mr. Larkin's "factual allegations . . . through the prism of the particular legal issues involved." *See Keltner*, 148 Fed. Cl. at 564. Mr. Larkin's discharge does not present a particularly "complex" or "subtle" military judgment. *See, e.g.*, *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). Mr. Larkin seeks review of the Marine Corps' factual conclusion that he used and distributed a prohibited drug. *See* Am. Compl. at 34–40. And the facts here are static; the Government is limited to the record on which the separation authority relied to discharge Plaintiff.

The Notification of Separation Proceedings plainly states the factual findings and regulations governing the decision to discharge Plaintiff. Ex. A at 132. The Marine Corps discharged Plaintiff under MCO 1900.16 Ch. 2 ¶ 6210(6)(c) for "Misconduct," specifically the "Commission of a Serious Offense." *Id.* The serious offenses in question are the violation and solicitation to violate Enclosure 5, paragraph 1.c of Secretary of the Navy Instruction 5300.28F, which prohibits the "wrongful use" and "distribution" of "controlled substance analogues (designer drugs)." *Id.* The Notification accuses Plaintiff of "using" and "wrongfully distributing MDMB-4en-PINACA," which it says is a "controlled substance analogue." *Id.*

The Court has jurisdiction to review whether Plaintiff's discharge was "arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [Plaintiff] has been seriously prejudiced." *Heisig,* 719 F.2d at 1156. The central issue with the discharge is whether the separating authority properly concluded that Mr. Larkin used or distributed MDMB-4en-PINACA. Plaintiff claims the separating authority failed to make this finding by a "preponderance of the evidence," as required by regulation. Am. Compl. at 28 (citing MCO 1900.16 Ch. 2 ¶ 6309(1)(a)). The Board's familiarity with military procedure does not render it a superior forum for reviewing that factual issue.

The Court must review the separating authority's decision based on "the administrative record already in existence, not some new record made initially in the reviewing court." *Walls v. United States,* 582 F.3d 1358, 1367 (Fed. Cir. 2009) (quoting *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743 (1985)). Similarly, the BCNR "is not an investigative body," but reviews naval records already in existence. 32 C.F.R. § 723.2(b). If the case required the development

or completion of the administrative record, a remand might be the best course. Indeed, this Court has previously remanded to a correction board to "aid the defendant in compiling and reviewing the administrative record" and prevent the Court's review of an incomplete record. *See Lancaster*, 2022 WL 3100430, at *3 (remanding because the plaintiff's complaint attached no supporting documentation, alleged multiple claims relating to multiple military offices, and the Government confessed an inability to compile the appropriate documents "despite counsel's best efforts" to retrieve them from the relevant offices).

But here, Defendant raises no concerns about compiling the administrative record. *See generally* Mot. for Remand. In a status conference before the Court, the Government suggested that the relevant record to review is the "administrative separation package," which is already complete and includes the notification of the bases for separation, the investigation report, Plaintiff's military profile, his rebuttal materials, a legal officer's opinion, and the separating authority's final decision. Tr. at 9–10. And the Amended Complaint already attaches the supporting documents the Marine Corps gave Mr. Larkin to write his rebuttal, including the Notification of Separation Proceedings, administrative remarks advising him of the charges, and the CID's full investigation report. Tr. at 22. *See also* Am. Compl. at 81–124, 130–133. The Amended Complaint also attaches the final recommendation for administrative separation. Am. Compl. at 125–129. At this stage, it appears the parties can provide the Court with a complete record.

The Government further argues remand is appropriate "because the BCNR has uniquely broad authority to consider not only any legal or factual errors alleged, but—unlike this Court— also to consider the equities and correct any 'injustice,' and order full relief." Mot. for Remand at 3 (quoting 10 U.S.C. § 1552(a)(1)). Even if "the parties proceeded to litigate the matter and Mr. Larkin ultimately prevailed," the Government asserts "the likely remedy still would be 'to remand to the agency for additional investigation or explanation.'" *Id.* at 5 (first quoting *Fla. Power & Light Co.*, 470 U.S. at 744; and then citing *Strand v. United States*, 706 F. App'x 996, 1000–01 (Fed. Cir. 2017)).

But here, the Board's power to consider equities does not weigh in favor of remand. As noted, the resolution of Plaintiff's claims hinges on a review of the Marine Corps' determination that he used and distributed MDMB-4en-PINACA, a task as suitable for the Court as a correction board. Furthermore, as discussed above, certain equitable relief is available to discharged servicemembers at this Court. "[I]ncident of and collateral to" any judgment in Plaintiff's favor, the Court may "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2). *See also Tippett,* 28 Fed. App'x at 945 (awarding plaintiff cancellation of his discharge, reinstatement in the Army, and correction of records to reflect active duty service). Finally, a remand to the BCNR will not assist with additional investigation because it is "not an investigative body." 32 C.F.R. § 723.2(b). *See also Pope v. United States*, 172 Fed. Cl. 149, 152 n.1 (2024) (noting the "curious argument" that the Court should have remanded for "additional investigation" to the BCNR, as it is not an investigative body).

### 2.    Finality and Efficiency Weigh Against Remand.

The Government argues that, should the Board award complete relief to Plaintiff, a remand may "lead to a more efficient means of resolving the plaintiff's claim promptly." Mot. for Remand at 6 (quoting *Culpepper*, 2023 WL 124864, at *4). But the mere possibility the Board may side with Plaintiff does not inherently fulfill the interest of judicial efficiency. If it did, remand would always be the more efficient choice. This Court declines to adopt a general assumption "that voluntary remands do not erode the rights of private parties to the litigation, but rather save those parties time and resources." Revesz, *Voluntary Remands* at 402. Instead, the Court looks for specific reasons that a remand may more efficiently resolve the case at hand, especially where the parties can already produce a record that is "sufficiently ripe for judicial review." *See Keltner,* 148 Fed. Cl. at 566.

Defendant has not provided compelling reasons. It cites prior remand orders where the Court found "substantial and legitimate reasons to remand so that the board may conduct review in the first instance," but it does not analogize further. *See* Mot. for Remand at 3 (citing *Lohman*, 154 Fed. Cl. at 359–60; *Wolfing,* 144 Fed. L. at 518; *Culpepper,* 2023 WL 124864, at *3; *Lancaster,* 2022 WL 33100430, at *1). In decisions to remand to a correction board in the first instance, the Court has typically found that the board's review will benefit the final resolution of claims. *Lohman,* 154 Fed. Cl. at 360 (remanding to "limit the issues before the court"); *Wolfing,* 144 Fed. Cl. at 516 (remanding to benefit from "the Army's expertise . . . and access to interpretations of the relevant [regulatory] provisions"); *Culpepper,* 2023 WL 124864, at *1 (remanding because the BCNR could simultaneously correct records and "coordinate with the appropriate agencies to provide the requisite monetary relief").

A remand here does not promise the same potential benefits found in other cases. There is no need to "narrow the issues that remain for this Court" because the issues are already sufficiently narrow. *See* Mot. for Remand at 5. Nor do Mr. Larkin's claims present especially complex damages calculations. *See* Am. Compl. at 41 (requesting damages for back pay for a single individual). Instead, the pressing task at hand is to review the propriety of Plaintiff's discharge.

Finally, the Government seemingly belies its stated expectation for an efficient resolution on remand by requesting the maximum six-month remand period allowed by Court rules. *See* Mot. for Remand at 6; RCFC 52.2(b)(1)(B). While it is well within the Court's discretion to grant less time than the Government requests, *see Culpepper*, 2023 WL 124864, at *4, it is not required to address timeliness concerns by setting aggressive remand schedules. Plaintiff has properly brought claims before the Court—the Court chooses to hear them.

**VI.    Conclusion**

For the reasons above, Plaintiff's Motion for an Emergency Preliminary Injunction and Defendant's Motion for a Voluntary Remand are **DENIED.**  ECF Nos. 10 & 17.  The parties shall file a Joint Status Report by **July 7, 2025** updating the Court on the status of settlement discussions and their respective positions on a voluntary referral of this matter to the Court's Alternative Dispute Resolution program.  If either party reports that settlement discussions are not productive, the Report shall include a joint motion for entry of a scheduling order pursuant to Appendix K of the Court's rules.

**IT IS SO ORDERED.**


 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge